**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ANDREA HANEY, as Personal
Representative for the Estate of
BRIAN L. HANEY, on behalf of the
Estate,[1]

    Plaintiff,

v.

CSX TRANSPORTATION, INC.,

    Defendant.

Case No. 3:23-cv-1226-TJC-PDB

## O R D E R

This is an employment case set in the COVID-19 era. Brian Haney worked for CSX Transportation, Inc., and brings three claims: disability discrimination, retaliation, or alternatively breach of contract seeking to enforce a settlement agreement. CSX has moved for summary judgment, and the matter has been fully briefed. Docs. 20, 29, and 34. The Court held a hearing on the motion on July 23, 2025, and incorporates that discussion by reference. Docs. 46 and 47.

---

[1] In 2022, Brian Haney was diagnosed with pancreatic cancer and died later that year. See Doc. 4 ¶¶ 27, 30. This lawsuit is brought by his widow, Andrea Haney, on behalf of his estate. Id. ¶ 4.

## I. FACTS

A. Overview of Haney's Employment with CSX

CSX hired Haney in 1998 as a dispatcher in Indianapolis, Indiana location. Doc. 21-2 ¶ 5. By 2018, the Indianapolis location had shut down, and Haney transferred to Florida. See Doc. 21-1 ¶ 3; Doc. 21-2 ¶ 11. Also by 2018, Haney was diagnosed with diabetes and received an accommodation to wear open toed shoes at work and take breaks to administer medication. Doc. 21-7 at 39–40. Before 2020, Haney did not need any other accommodations to perform his job. See id. at 39–40. Haney's last job was as Assistant Chief Train Dispatcher (ACD), a union position.[2] Doc. 21-2 ¶¶ 5–6.

B. Haney's 2020 Surgery and Effort to Return to Work (March to September 2020)

In March 2020, Haney took leave for scheduled surgery. See id. ¶ 8; Doc. 21-2 ¶ 5. Several months later, Haney had recovered and was ready to return to work, but COVID-19 was a concern. In late May, Haney asked CSX about working from home. Doc. 28-1 at 1. In early June, Haney's physician, Dr. Bruce Records, submitted a CSX form requesting Haney be allowed to work from home until after receiving a COVID-19 vaccination due to his "significantly increased risk of death" if he were to contract COVID-19.[3] Doc. 28-2. Haney had increased

---

[2] The position is covered by a collective bargaining agreement between CSX and the American Train Dispatchers Association. Doc. 21-2 ¶¶ 5–6.

[3] The submission used a prior version of the CSX Employee

risk due to diabetes, hypertension, and morbid obesity. Id. The form asked if these conditions "result[ed] in a substantial impairment in [Haney's] ability to perform the Activities of Daily Living when away from work" and Dr. Records checked "No." Id. It also asked about Haney's ability to perform at "baseline" or "Full Capacity," with the option to check a box for yes or no. Id. For both, Dr. Records wrote "NA." Id.

In June, the CSX medical department notified Haney it could not provide an accommodation because he did not have an active illness preventing him from working. See Doc. 28-4; Doc. 21-8 at 25–28. Haney was told the request should be directed to his union, labor relations and human resources.[4] See Doc. 28-4; Doc. 21-8 at 25–28. Thus began one of the communication issues between the parties. From Haney's view, the medical department told him he did not have a disability and "would not grant [his] request for a reasonable accommodation because it was an issue for Labor Relations." Doc. 28-5. The CSX medical department viewed the situation differently: "The information we had was he was requesting an accommodation for a medical condition that he

---

Accommodation Request Form, returning just the questionnaire portion (excluding instructions). Compare Doc. 21-8 at 78–80 with Doc. 21-6 at 169–74.

[4] Haney interpreted this as "official notice from CSX that it is unwilling to enter into an interactive process as required by law to discuss my request for a reasonable accommodation for my covered disability . . . ." Doc. 28-4.

3

did not currently have, which was COVID-19. In the absence of that condition, then there wasn't any reason to address it under ADA."[5] Doc. 21-8 at 26.

On July 1, 2020, Haney complained to the Vice President of Human Resources, about discrimination, resulting in an investigation by Matt Charron, Senior Manager Employee Relations. Doc. 28-5; Doc. 28-6. Between July and September 2020, Haney and CSX (primarily Charron) communicated frequently about the status of Haney's request/complaint, including options to allow Haney to return to work.[6]

Haney requested to work remotely or report to a CSX location with a private office and restroom. See Doc. 21-6 at 54; Doc. 21-2 ¶¶ 12–13. CSX

---

[5] Mrs. Haney's testimony confirmed that when Haney tried to return to work after surgery, he "did not have a disability that prevented him from working. That is correct." Doc. 21-7 at 88.

[6] The following information is offered to show the frequency of communication but does not detail nor fully describe all communication. Charron reached out to Haney on July 5, 2020, and Haney returned the call on July 9, 2020, and Charron followed up by email that day. Doc. 28-8 at 5. Haney emailed about the status on July 22, 2020, and Charron responded the same day, telling Haney it was still under investigation. Doc. 28-7; Doc. 28-8 at 4. Charron and Haney spoke by phone (initiated by Charron) on July 24, 2020. Id. at 3–4. Haney emailed Charron expressing concerns. Doc. 28-8 at 1–3. Haney emailed Charron on July 31, 2020, asking about progress and Charron responded the same day, that it was still under investigation. Doc. 28-9 at 3; Doc. 28-10 at 1. Haney emailed again asking about progress on August 14, 2020. Doc. 28-10 at 1. Charron emailed on August 17, 2020, "[s]till working on matter." Doc. 28-13 at 3. Haney emailed Charron on September 1, 2020, about status. Id. Charron responded on September 3, 2020, thanking Haney for his patience. See Doc. 28-12.

4

determined Haney could not work remotely because dispatcher roles, including Haney's, used specialized equipment, which could not be moved, even to other CSX locations. Doc. 21-5 at 19. Because trains operate continuously (24/7, everyday), workstations are shared with coworkers across shifts. Id. at 16. CSX never allowed a dispatcher or ACD to work from home. Id. at 19. The work area for dispatchers and ACD's had multiple workspaces, but no available private offices or restrooms. Doc. 21-2 ¶ 12; see Doc. 21-5 at 16–17.

Haney proposed relocating back to the Indianapolis facility, but the building was for sale and not operational.[7] Doc. 21-2 ¶ 11. CSX offered to train Haney for positions that would allow remote work, but Haney declined. Id. ¶ 10. CSX emphasized to Haney the safety precautions it was taking generally, including self-screening checklists, temperature checks, facemasks, staggered start times to avoid congestion, limits on the number of people in common areas, enhanced cleaning, sanitation stations, and upgraded air filtration where Haney worked. Doc. 21-2 ¶14; Doc. 21-3 ¶ 3; Doc. 28-14.

In late August, Dr. Records completed and returned two CSX forms: "Certification of Ongoing Illness or Injury" and "Attending Physician's Return to Work Report." See Doc. 28-11. Dr. Records indicated Haney could work two weeks after being vaccinated or he could immediately return to work if allowed

---

[7] After the transfer, Haney maintained homes in both Florida and Indiana. See Doc. 21-7 at 58.

5

to work remotely or at a work location sufficiently isolated.[8] See id. In September, CSX offered Haney an isolated and dedicated workstation.[9] Doc. 21-3 ¶ 5; Doc 21-1 ¶ 8. After consulting with Dr. Records, Haney declined this option. Doc. 21-6 at 30; Doc. 21-7 at 187.

After communicating with Haney, CSX's Chief Medical Officer, Dr. Heligman, contacted Dr. Records, and the doctors spoke on September 24, 2020. See Doc. 28-14; Doc. 21-6 at 52. During the call, Dr. Heligman explained the CSX proposal and Dr. Records agreed it was acceptable. Id. Dr. Heligman documented the discussion, allowing Dr. Records to review and comment before agreeing in writing to the proposal. Id. CSX told Haney the doctors would be speaking, but no one from CSX informed Haney about the outcome of the call. See Doc. 21-8 at 48–50; Doc. 21-6 at 24–25.

---

[8] On August 26, 2020, Dr. Records completed the CSX form, "Attending Physician's Return to Work Report," stating Haney could return to work without accommodations two weeks after a COVID-19 vaccination. See Doc. 21-8 at 40-41, 78–80. However, vaccines were not yet available and emergency authorizations for vaccines began in December 2020. See History of COVID-19: Outbreaks and Vaccine Timeline, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/history-disease-outbreaks-vaccine-timeline/covid-19 (last visited Sep. 2, 2025).

[9] The CSX proposal was for an isolated workstation that did not have to be shared and in close proximity to a restroom, used less because it was not close to other work areas. See Doc. 28-14. Dr. Records agreed a private restroom was not necessary (and indicated he had not discussed this with Haney). Id.

6

During this period, Haney asked Dr. Heligman if CSX was medically withholding him from work. Doc. 21-8 at 44, 81. Dr. Heligman responded "[n]o, you are not being held out of service medical. Your physician has prevented you from returning to work."[10] Id.; see Doc. 21-3 ¶ 8.

C. Haney's EEOC Charge and Return to Work (October 2020 to February 2021)

On October 6, 2020, Haney filed a charge alleging discrimination and retaliation with the Equal Employment Opportunity Commission, and CSX was notified of the EEOC charge the next day. See 21-4; Doc. 21-2 ¶ 16. The same day CSX learned of the EEOC charge, Dr. Records confirmed to CSX in writing that the proposed isolated workstation was acceptable and would allow Haney to return to work. Doc. 21-3 ¶6. Apparently, Dr. Records did not notify his patient, Haney, of this decision.

Haney remained out of work until February 2021. Doc. 21-2 ¶ 18. The delay with Haney's return reflects a lack of communication. The record does not show communication between Haney and Charron after the EEOC charge was

---

[10] The record does not fully explain, but Haney's ability to return to work appears dependent on being "marked" available. See Doc. 21-2 ¶ 8; 21-7 at 28, 67–68, 79. When he started his leave, Haney marked himself "unavailable for work." See Doc. 21-2 ¶ 8. When he was ready to return, Haney tried to mark himself available for work but could not. Doc. 21-7 at 28, 67–68, 79. Haney's supervisor said Haney was "not showing in the system as eligible to 'mark up.'" See Doc. 21-7 at 389.

7

filed until the EEOC mediation or a few days before.[11] See Doc. 28-15; Doc. 21-6 at 52–53.

Haney had an appointment with Dr. Records in November 2020, but there is no evidence they discussed the outcome of the call between Drs. Records and Heligman, or that Haney was told Dr. Records approved the CSX proposal. See Doc. 21-7 at 255.

At or around the EEOC mediation, on January 8, 2021, Haney learned Dr. Records had approved the workstation proposal.[12] Doc. 21-6 at 24–27; Doc. 34-1 ¶ 9. At mediation, CSX reiterated its proposal of a dedicated and isolated workstation. Doc. 21-2 ¶ 17. Haney did not immediately accept the workstation proposal, but he did agree to tour the facility to better understand the proposal. See id. After the tour (by video conference at Haney's request), Haney declined the proposed workstation because it did not include a private office and a private restroom. See Doc. 28-17; Doc. 28-19.

On January 19, 2021, Dr. Heligman wrote Dr. Records again about the proposed workstation and Dr. Records confirmed his agreement in writing the same day. Doc. 28-19. Haney agreed to the proposed workstation on January

---

[11] The union did communicate with CSX about Haney. See Doc. 28-16.

[12] Even though CSX quickly agreed to mediate the EEOC charge, it did not occur until January 8, 2021, due to scheduling issues. Doc. 21-6 at 29–30; Doc. 21-2 ¶¶ 16–17.

29, 2021; CSX made the necessary arrangements; and Haney returned to work on February 2, 2021. See Doc. 21-2 ¶ 18. Haney did not request any further accommodations.

### D. Outcome of the EEOC Charge (after February 2021)

Even though Haney returned to work, his EEOC charge was not resolved. See Doc. 21-2 ¶ 19. Between March and May 2022, Haney and Charron communicated directly about resolution. See Doc. 21-7 at 261–73 (Exhs. 16–18). CSX provided a draft settlement agreement and Haney objected to several provisions, including the scope of the release, non-disparagement and confidentiality. Id. at 268–60; Doc. 21-2 ¶ 19. The parties agreed to change the release language, but did not agree about confidentiality or non-disparagement. See Doc. 21-7 at 92–95. Because of the prolonged negotiations, in April 2022, Haney instructed the EEOC to proceed with an investigation. Id. at 270.

The EEOC found cause to believe a violation had occurred and the parties engaged in conciliation.[13] Doc. 28-21. As part of the conciliation process, the EEOC investigator, Blondel Vincent, communicated with both Haney and CSX

---

[13] If the EEOC determines there is cause to believe a violation has occurred, it is required to seek a resolution through conciliation, which is voluntary for the parties. EEOC investigators work with both parties to explore resolution. See U.S. Equal Emp. Opportunity Comm'n, What You Should Know: The EEOC, Conciliation, and Litigation (Jan. 21, 2015), https://www.eeoc.gov/laws/guidance/what-you-should-know-eeoc-conciliation-and-litigation.

9

about settlement in July and August 2022. See Doc. 21-7 at 274–75; Doc. 28-23. Through Vincent, CSX and Haney exchanged monetary offers. See Doc. 21-7 at 274–75; Doc. 28-23. In addition to countering CSX's monetary offer, on July 21, 2022, Haney wrote "the General Release from CSX must include my [] non-disparagement clause." Doc. 21-7 at 274–75. Vincent responded "[a]s far as the general release, you'll work that out with CSX . . . if we come to a mutual monetary agreement." Id. On August 18, 2022, Vincent wrote Haney "[w]e've agreed to the $45k. Now it's a matter of the language in [the] EEOC's conciliation agreement and your general release. CSX should be contacting you regarding a general release once I've finalized the Conciliation." Doc. 28-23 at 2. On August 29, 2022, Haney asked Vincent about the status because he had not "heard from CSX regarding a general release." Id. Vincent responded stating the "monetary amount is not the issue now but the training and other aspects are at play." Id. at 1.

Once again, communication was a problem. The record does not indicate that CSX and Haney agreed on language for non-disparagement or confidentiality. CSX and Haney did not execute a settlement agreement. CSX did not reach an agreement to resolve the EEOC charge. The EEOC closed its file and issued a right to sue notice. See Doc. 28-25.

The record is also unclear how much of Haney's time off was paid or unpaid. Neither party specifies Haney's normal rate of pay. Haney complained

10

he was "deprived of pay and health benefits," and argues leave without pay was an adverse action. Doc. 28-12; Doc. 29 at 14. CSX does not claim Haney was fully paid, but alleges he received payments of more than $40,000 for his leave between March 2020 and February 2021, including more than $10,000 for short term disability benefits for the March 2020 surgery.[14] See Doc. 34 at 9, n.8.

This case ensued.

## II.  Overview

After recovering from surgery in 2020, Haney was ready to return to work, but he was immunocompromised and worried about health risks if he caught COVID-19. Haney did return to work, but it was eight months after his recovery. Although CSX and Haney communicated frequently (both about Haney's return to work and how to resolve their differences), they did not always communicate well, and the problems in communication contributed to why Haney was out of work for so long. The lawsuit is about whether CSX has legal liability related to the delay and whether the parties ever agreed to resolve Haney's EEOC charge.

---

[14] "Haney received $10,336.80 in Short-Term Disability benefits for [leave] from March 20, 2020 to June 12, 2020." Doc. 34-1 ¶ 3. "Haney received $21,237.01 in direct deposits from the CSXT payroll from March 20, 2020 to December 11, 2020. . . . [and] $11,968.44 in Railroad Retirement benefits from May 21, 2020 until February 5, 2021." Id. ¶¶ 4–5.

11

**III. Analysis**

A. Standard

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Further, the Court will construe evidence in a light most favorable to Haney as the non-moving party. See Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1098 (11th Cir. 2014).

B. Disability Discrimination

Haney alleges CSX's refusal to provide reasonable accommodation violated the Americans with Disabilities Act (ADA). [15] To establish discrimination under the ADA, a plaintiff must show: (1) he was disabled; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability. Holly v. Clairson Indus., L.L.C., 492 F.3d 1247, 1255–56 (citation omitted). The ADA has three definitions of disability: (1) a physical or mental impairment that substantially limits one or more major life activities,

---

[15] The disability discrimination claim alleges violation of the ADA and the Florida Civil Rights Act. See Doc. 41. The analytical framework is the same. Holly v. Clairson Indus., L.L.C., 492 F.3d 1247, 1255 (11th Cir. 2007).

(2) a record of such impairment, or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(1).

Haney argues his diabetes was a disability that CSX had to accommodate. See Doc. 29 at 8–12. Haney is correct that diabetes is generally considered a disability, but his argument (both in 2020 and now) overlooks other factors necessary to impose a duty to accommodate. The duty to accommodate arises when a limitation based on a present condition impairs an employee's ability to perform an essential function of the job. There is not a duty to accommodate based on a risk for a condition, especially when the employee is currently able to perform essential job functions. EEOC v. STME, LLC, 938 F.3d 1305, 1314–15 (11th Cir. 2019) ("[A]n employee has a disability under the ADA when that employee actually has, or is perceived as having, an impairment . . . .") (citation modified). The Eleventh Circuit, relying on the EEOC's own interpretative guidance, has concluded predisposition to an illness or disease is not a physical impairment. Id. at 1316–17; see D'Onofrio v. Costco Wholesale Corp., 964 F.3d 1014, 1022 (11th Cir. 2020) ("[I]f an employee does not require an accommodation to perform her essential job functions, then the employer is under no obligation to make an accommodation, even if the employee requests an accommodation that is reasonable and could be easily provided.").

Courts applying this reasoning have rejected ADA claims based on being susceptible to COVID-19 or being unvaccinated. See Kim v. PGA Tour, No. 3:23-

13

cv-441-TJC-JBT, 2024 WL 280297 at *5 (M.D. Fla. Jan. 25, 2024) (collecting cases).

Haney's argument fails for similar reasons. To the extent Haney's diabetes impacted his ability to perform essential duties of his job, CSX had already provided reasonable accommodations in 2018. Once he recovered from surgery, Haney was able to perform the essential duties of his job with the prior accommodations. No further accommodations were needed. Haney's risk for serious complications if he contracted COVID-19 did not impose a duty on CSX to provide additional accommodations to mitigate those risks.[16]

Accordingly, summary judgment is due to be granted as to Count I for disability discrimination.

C. Retaliation

A prima facie case of ADA retaliation requires (1) statutorily protected activity, (2) a materially adverse action, and (3) a causal connection between the two. Batson v. Salvation Army, 897 F.3d 1320, 1329 (11th Cir. 2018).

Haney argues he had two acts of protected conduct (requesting an accommodation and filing an EEOC charge) and CSX retaliated in two ways ("delaying the provision of a reasonable accommodation and by failing to notify him that he was allowed to return to work in a timely manner once an

---

[16] Even so, CSX eventually provided workplace accommodations, suitable to Haney and his doctor.

14

accommodation had been agreed to."). Doc. 29 at 13–14. That separates the retaliation claim into two parts.[17] One part involves May through October 6, 2020 (after Haney's request for accommodation and before his EEOC charge) and the other part involves October 7, 2020, through February 2, 2021 (after CSX knew of the EEOC charge and until Haney's return to work).

The first part is easily addressed. Because CSX was not required to provide Haney a reasonable accommodation, as discussed supra, any delay in providing a reasonable accommodation was not an adverse employment action. Therefore, a retaliation claim based on delay in providing a reasonable accommodation (or not engaging in the interactive process) fails as a matter of law.

The second part is a closer call. Before Haney filed his EEOC charge, he and CSX were communicating often about his situation. After CSX learned of the EEOC charge, they stopped communicating. Because CSX learned of the EEOC charge and Dr. Records confirmed the workstation approval the same day, the lack of communication meant Haney did not learn Dr. Records approved the proposed workstation. CSX conveyed that information three

---

[17] Haney does not base a retaliation claim on his internal complaint. Even if he did, it would fail. Because Haney was off work both before and after his internal complaint, there was no adverse action causally connected to that protected activity. See Edgerton v. City of Plantation, 682 F. App'x 748, 750–51 (11th Cir. 2017).

15

months later, as part of the EEOC mediation. It took almost another month for Haney to return to work.

The Supreme Court held that an adverse action can support a retaliation claim if it rises to the level to "dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006). There, a few days after her employer was notified about her EEOC charges, the plaintiff and her supervisor had a disagreement. Id. at 58. The plaintiff was accused of insubordination and suspended without pay. Id. The company investigation determined there was not insubordination, and the plaintiff was reinstated with backpay—but the unpaid suspension had lasted thirty-seven days. Id. at 58–59. A jury decided the unpaid suspension was retaliation. Id. at 70.

The company argued there was not an adverse action because the plaintiff was reinstated with backpay. Id. at 71. The Supreme Court disagreed, noting the plaintiff "and her family had to live for 37 days without income. They did not know during that time whether or when [the plaintiff] could return to work. Many reasonable employees would find a month without a paycheck to be a serious hardship." Id. at 72. But the Supreme Court also emphasized that determining whether an adverse action occurred has an objective component and depends on context. Id. at 69–70 (noting that a "schedule change in an employee's work schedule may make little difference to many workers, but may

16

matter enormously to a young mother with school-age children[,]" and a "supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination.").

CSX makes a similar argument here. It claims there was not an adverse action, and it did not prevent Haney from returning to work because CSX did not hold him out of service. Doc. 20 at 22. Viewing the facts in the light most favorable to Haney, CSX stopped communicating with Haney immediately after it learned of his EEOC charge, and the lack of communication delayed Haney's return to work by three to four months. Doc. 29 at 14–15. As the alleged adverse employment action occurred shortly after protected activity, the temporal proximity may support a causal connection. Grant v. Miami-Dade Cnty. Water & Sewer Dep't, 636 F. App'x 462, 468 (11th Cir. 2015) (citing Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004)).

CSX's lack of communication after Haney filed his EEOC charge and its impact on when Haney returned to work creates a fact dispute for the jury. CSX argues it was not responsible to communicate to Haney the agreement between CSX's and Haney's doctors approving the workstation proposal. It also says Haney could have asked his doctor, especially at his November appointment. A

17

jury might well agree.[18] However, though weak, the Court cannot grant summary judgment on the retaliation claim.[19]

D. Breach of Contract

To prove breach of contract under Florida law, Haney must establish there was "(1) a valid contract; (2) a material breach; and (3) damages." Beck v. Lazard Freres & Co., LLC, 175 F.3d 913, 914 (11th Cir. 1999) (applying Florida law). It is undisputed that both parties, through communication to the EEOC, agreed to a monetary amount to settle. The parties disagree, however, whether that is enough for an enforceable agreement when other terms were not finalized. Haney, as the party seeking to enforce the agreement, has the burden to establish there was a meeting of the minds as to all essential elements of the agreement. Williams v. Ingram, 605 So. 2d 890, 893 (Fla. 1st DCA 1992).

In March 2022, CSX proposed a release which Haney rejected because he objected to non-disparagement and confidentiality provisions and the scope of

---

[18] A jury might also conclude that Haney was advised at the EEOC mediation in January 2021 of his doctor's agreement but delayed going back to work for another month.

[19] CSX argues the retaliation claim fails because Haney has not established pretext. This argument is conclusory and does not need to be separately addressed by the Court. See Doc. 20 at 22–24. CSX does not give a reason for its lack of communication with Haney after the EEOC charge other than its claim it was not responsible to inform Haney about Dr. Records' approval of the workstation proposal, which the Court has determined is a fact question for the jury.

the release. They eventually agreed to language for scope of the release, but did not agree about other changes. A few months later, the parties attempted again to settle, this time with the EEOC investigator involved. Even after CSX and Haney reached agreement as to the monetary amount, Haney insisted the agreement include his changes for confidentiality and non-disparagement. These objections were never resolved.

Because the parties did not have a meeting of the minds as to all material terms there is not an enforceable settlement agreement. Id. Accordingly, summary judgment is due to be granted as to Count III, the breach of contract claim.

Accordingly, it is hereby

**ORDERED:**

1. Defendant CSX Transportation, Inc.'s Motion for Summary Judgment (Doc. 20) is granted in part and denied in part. Summary judgment is **GRANTED** in favor of CSX Transportation, Inc., as to Counts I and III and **DENIED** as to Count II.

2. Before the Court sets the case for trial on the retaliation claim, the parties should make one last effort to settle. **No later than September 19, 2025**, the parties will make a joint filing indicating whether they want to mediate (and the name of the mediator and mediation date) or attend a settlement conference with the Magistrate Judge.

**DONE AND ORDERED** in Jacksonville, Florida the 4th day of September, 2025.



TIMOTHY J. CORRIGAN
Senior United States District Judge

ddw
Copies:

Counsel of record